UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

        Plaintiff,

                                        Criminal No. 22-20015

v.

                                        HON. MARK A. GOLDSMITH

CHARLES MCCULLOUGH,

        Defendant.

_____/

**OPINION & ORDER**
**FINDING THAT DEFENDANT VIOLATED HIS ORDER OF SUPERVISED RELEASE**

The Government has filed a petition alleging that Defendant Charles McCullough violated the conditions of his supervised release by (i) committing another crime, i.e., being a felon in possession of a firearm; (ii) unlawfully possessing a controlled substance; and (iii) possessing a firearm.   Petition (Dkt. 3).   The Court held a hearing, during which McCullough admitted guilt as to the second alleged violation—unlawful possession of a controlled substance.   Hr'g Tr. Vol. 1 at 8 (Dkt. 16).   McCullough contests the two remaining violations.   See Def. Supp. Br. (Dkt. 20).   For the reasons that follow, the Court finds that the Government has established, by a preponderance of the evidence, that McCullough committed the first and third violations by possessing a firearm.

## I.   BACKGROUND

In 2004, McCullough was sentenced in the United States District Court for the Western District of Michigan to 120 months' custody for conspiring to distribute and possessing with the intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A).   See Judgment, Dkt. 54, case no. 04-00031 (W.D. Mich.); Gov't Supp. Br. at 2 (Dkt. 19).   In 2009, while he was still in federal custody for his cocaine offense, McCullough was

sentenced in the United States District Court for the Southern District of Mississippi to 120

months' custody (to be served consecutively to his cocaine conviction) for conspiring to commit

a murder for hire, in violation of 18 U.S.C. § 1958.   See Judgment, Dkt. 174, case no. 08-00020

(S.D. Miss.); Gov't Supp. Br. at 3.   McCullough's supervised release began when he was released

from custody on December 28, 2021.   Petition at 1.

The terms of supervised release for both of McCullough's federal convictions included

conditions that prohibit McCullough from (i) committing another crime or (ii) possessing a

firearm.   See Supervised Release at PageID.4 (Dkt. 1-1).   The petition charges that McCullough

violated these conditions in January 2022.   Petition at 2.   According to a report filed with the

Detroit Police Department, on January 11, 2022, McCullough pointed an AR-style firearm at his

niece and took her cellphone.   Id.   On January 20, 2022, Detroit Police Department officers

executed a search warrant at the three-bedroom residence where McCullough resides.   Id.; Hr'g

Tr. Vol. 1 at 54.   McCullough, his mother, and his brother all reside at this home.   Hr'g Tr. Vol.

1 at 54.   McCullough's mother occupies a bedroom on the first floor.   Id. at 55.   There is one

bedroom on the second floor, which the Government believes was occupied by McCullough.[1]

When officers searched the upstairs bedroom, they "located numerous firearms in the upstairs

bedroom where McCullough was observed"—including an AR-style firearm—as well as several

magazines and a box of ammunition.   Petition at 2.

McCullough is currently being detained pending this Court's resolution of the supervised

---

[1] As discussed further below, McCullough refutes that he occupied this bedroom.   Ultimately, this dispute is immaterial, as the Government has produced other evidence to show, by a preponderance, that McCullough possessed a firearm, in violation of the conditions of his supervised release.

release violations.   See Order of Detention (Dkt. 11).

## II.   ANALYSIS

A district court may revoke a term of supervised release if the Government proves "by a preponderance of the evidence that the defendant violated a condition of supervised release."   18 U.S.C § 3583(e)(3); see also United States v. Bujak, 347 F.3d 607, 609 (6th Cir. 2003).   Here, the Government charges that McCullough violated two conditions of his supervised release by possessing a firearm in January 2022: (i) the condition that prohibits McCullough from committing further crimes and (ii) the condition that prohibits McCullough from possessing a firearm.   Being a felon in possession of a firearm is a crime under both state and federal law.   See Mich. Comp. L. § 750.224f; 18 U.S.C. § 922(g).[2]   As the parties agree, see Gov't Supp. Br. at 10–11; Def. Supp. Br. at 11, possession of a firearm can be predicated "on either actual or constructive possession of a firearm," United States v. Grubbs, 506 F.3d 434, 439 (6th Cir. 2007).   A defendant has actual possession of a firearm if he has "immediate possession or control" of the firearm, whereas a defendant has constructive possession if he "knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others."   United States v. Raymore, 965 F.3d 475, 483 (6th Cir. 2020) (punctuation modified).   The Government has established by a preponderance of the evidence that McCullough actually possessed a firearm or, at minimum, constructively possessed a firearm.

### A.   Actual Possession

To show that McCullough actually possessed a firearm on January 11 when he pointed an AR-style gun at his niece, the Government submitted the following evidence.   First, Detroit Police

_____

[2] McCullough's status as a felon is not disputed.

Department officer Steven Townsend, who investigated the January 11 incident, testified about his January 19, 2022 conversation with McCullough's niece.   Hr'g Tr. Vol 1 at 16.[3]   The niece told Townsend that, on January 11, she was over at the family home where McCullough was residing. Id. at 17.   McCullough got involved in a fight between the niece and the father of the niece's child. Id.   The niece stated that McCullough talked to her at the window of her car; he then pointed an AR-style gun at her, told her to not call the police, and took her cell phone.   Id. at 16–17.[4],[5]   The niece informed Townsend that McCullough was her uncle, and she identified McCullough's face

---

[3] McCullough contends that the Court cannot consider Townsend's testimony about the niece's statements because this evidence is hearsay and unreliable.   Def. Supp. Br. at 8–11.   McCullough suggests that his niece's statements are unreliable, in part, because Officer Townsend "did not check the complaining witness for outstanding warrants or other criminal history."   Id. at 5. "[R]evocation hearings are more flexible than a criminal trial"; "[t]he judge may consider hearsay if it is proven to be reliable."   United States v. Stephenson, 928 F.2d 728, 732 (6th Cir. 1991). McCullough has offered no case law to show that statements are unreliable where an officer has not checked the declarant's criminal history; nor has he submitted any evidence showing that his niece has a criminal history that would bear on her credibility.   The Court concludes that Officer Townsend's in-court statements are reliable because they are corroborated by the niece's signed interview from the police department; a report of investigation by a Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) agent; and evidence discovered during a search of McCullough's home, all of which are described in further detail below.   Because Officer Townsend's testimony about his conversations with McCullough's niece are reliable, the Court appropriately considers the testimony in deciding whether McCullough violated his supervised release conditions.

[4] McCullough contends that Officer Townsend could not explain any "motive for [] McCullough to brandish a firearm."   Def. Supp. Br. at 5.   While motive can be helpful context to understand why McCullough possessed a firearm, it is not an essential element to show that McCullough committed the charged act.   Moreover, in a recorded interview, McCullough acknowledged that the fight happened on January 11 and that he had problems with his niece.   See Recorded Interview.

[5] McCullough asserts that the allegedly stolen cellphone was not found during the subsequent search of McCullough's home, but this neither proves that McCullough did not take the phone or that his niece's statements are unreliable.   McCullough could have stored the stolen cellphone in any number of areas outside of his home, or sold it by the time of the search, which happened nine days after the incident with his niece.

in a photograph.  Id. at 19, 21–22.   The Government presented the photograph of McCullough.

Gov't Ex. 2.[6]

Second, the Government presented the niece's signed January 19, 2022 interview.   Gov't

Ex. 1.   In that interview, the niece stated that on January 11, 2022, her uncle, McCullough, pulled

a gun on her and told her not to call the police.   Id. at 1.   She identified the gun as an "AR or AR

assault rifle."   Id. at 2.

Third, the Government presented a report of investigation that an ATF agent composed

after visiting the niece on February 26, 2022.   Gov't Ex. 3.   According to the report of

investigation, two ATF task force officers asked the niece if she would discuss the January 2022

incident; the niece stated that "the incident did happen" but that she "was told by family members

that Charles McCullough was in serious trouble for the offense," and her family members

encouraged her to "tell the court and detective that she made up the entire incident."   Id.   The

niece told the agents that she "would never lie about something like that, someone pulling a gun

on her," and that she "wouldn't lie to police or the courts."   Id.   She also stated that McCullough

"never apologized for what he did to her either."   Id.

Fourth, as discussed further below, during ATF agents' search of McCullough's home on

January 20, 2022, the agents discovered, among other things, an AR-style rifle.   Hr'g Tr. Vol 1 at

---

[6] McCullough tries to discredit his niece's identification of him by suggesting that Officer
Townsend should have shown the niece a photographic lineup or several photos of possible
perpetrators.   Def. Supp. Br. at 4–5.   He also states that the alleged incident happened outside in
the dark.   Id. at 3.   The Court does not find these arguments persuasive.   Officer Townsend
testified that the niece did not show any hesitancy in identifying McCullough as the perpetrator:
"She recognized Charles as her uncle and identified him right away."   Hr'g Tr. Vol 1 at 48.   And
given their familial relationship, it is less likely that McCullough's niece would have misidentified
him simply because she was shown only one photograph or because the incident happened outside
at night.

27.

The Government's evidence establishes, by a preponderance, that McCullough actually possessed an AR-style gun on January 11, 2022.   On separate occasions, McCullough's niece stated to Officer Townsend, a Detroit police officer, and ATF agents that McCullough pointed an AR-style rifle at her on that night.   In addition, officers found an AR-style when searching McCullough's home on January 20, 2022.[7]

Even if the Government had not established that McCullough actually possessed a firearm, it has, at the very least, established that he constructively possessed one, as discussed in further detail below.

## B.   Constructive Possession

As noted above, an individual has constructive possession of a firearm when he "knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others."   Raymore, 965 F.3d at 483 (punctuation modified).   The Government contends that McCullough constructively possessed firearms because firearms were found in his bedroom during the January 20, 2022 search of his home.   McCullough argues that the Government has not shown that the bedroom where the guns were found belonged to him. Def. Supp. Br. at 3–4.   He states, among other things, that more than one family member lived in the house and that Officer Townsend could not say if another person (namely, McCullough's

---

[7] McCullough suggests that the Government has not met its burden of showing actual possession of the firearm because "there are no fingerprint results on any of the firearms confiscated," "[t]here are no fingerprint results on the ammunition obtained," and "Officer Townsend did not know if DNA swabs were taken from the firearms."   Def. Supp. Br. at 4.   There is, however, no requirement that fingerprints or DNA be found on a firearm in order for a court to determine that the Government has established possession of a firearm by a preponderance of evidence.   For the reasons stated above, the Government has met its burden.

brother) occupied the bedroom where the guns were found.   Id. at 4.

McCullough's arguments are unavailing.   The Government submitted evidence at the revocation hearing showing, by a preponderance, that the bedroom was McCullough's or, at minimum, that he exercised control over it.   According to Officer Townsend's testimony, when the officers entered the home on January 20, McCullough was "on the top of the stairway that leads to the second floor of the home."   Hr'g Trans. Vol. 1 at 27.   The officers searched the bedroom on the second floor, locating the firearms and ammunition.   Officer Townsend testified that none of the guns were locked or concealed; they were in an "unsecured closet."   Id. at 48.   In his recorded interview, McCullough admitted to knowing about the AR-style rifle recovered during the search.   Recorded Interview.

Officer Townsend also testified that the search team discovered: (i) a tattoo gun underneath the mattress, (ii) a FedEx box filled with letters, (iii) a set of keys like house keys with a tag on them that had McCullough's name along with the words "blood borne pathogens."   Hr'g Tr. Vol. 1 at 27, 49.   The tattoo gun ties the bedroom to McCullough because, according to testimony of Probation Officer Lucas Doherty, McCullough had been working at a tattoo shop.   Id. at 52.   The letters connect McCullough to the room because they were addressed to McCullough.   Id. at 49. And in his recorded interview, McCullough admitted that the keys recovered by the officers were his house keys.   Recorded Interview.

The foregoing evidence shows that McCullough had constructive possession of the AR-style rifle, regardless of who owned the rifle or lived in the bedroom where it was stored.

## III.   CONCLUSION

For the foregoing reasons, the Court finds that the Government has established that

7

McCullough committed the first and third violations alleged in the petition by possessing a firearm.

The Court will set a sentencing date by separate entry.

    SO ORDERED.

Dated:  May 6, 2022                          s/Mark A. Goldsmith
        Detroit, Michigan                    MARK A. GOLDSMITH
                                             United States District Judge

8